**KILPATRICK TOWNSEND &
STOCKTON LLP**

James A. Trigg (5780648)
Georges Nahitchevansky (GN7750)
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Ryke Productions Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Angela Chinn d/b/a/ RefusalMan, and Does 1-10, <br><br> Defendants. | Case No. _____ <br><br><br> **<u>COMPLAINT</u>** |

Plaintiff Ryke Productions Ltd. ("Plaintiff"), by and through undersigned counsel, for its complaint against Defendants Angela Chinn d/b/a/ RefusalMan, and Does 1-10 (collectively, "Defendants") allege, based on their knowledge, information, and belief formed after a reasonable inquiry pursuant to Rule 11 of the Federal Rules of Civil Procedure, as follows:

<u>**SUBSTANCE OF THE ACTION**</u>

1.      This is an action at law and in equity for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.

2.      Defendants have created and monetized an online game incorporating designs, detailed gameplay plot elements, names, text, and content, among other things, that are

substantially similar to Plaintiff's copyrighted online game (the "Work") offered and monetized under the Plaintiff's Creeper Chaos and Creature Chaos brands, without Plaintiff's authorization.

3.      Defendants' actions infringe Plaintiff's exclusive copyright rights and have damaged and will continue to damage Plaintiff, and have caused and will continue to cause irreparable harm to Plaintiff, absent relief from this Court.

4.      Because the owner of and all of those involved in creation, distribution, and sales of the Defendants' infringing game are not presently known to Plaintiff, Plaintiff expects that certain Does beyond the Defendants currently named are involved in the infringement of Plaintiff's copyrighted Work. Through these proceedings, Plaintiff seeks to identify these entities or individuals and to enjoin such infringement.

5.      Defendants Does 1-10 are persons whose identities are unknown, but who are directing and/or contributing to the infringements alleged herein.

6.      Plaintiff therefore brings this action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under Sections 1331, 1338(a), and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a), and 1338(b).

8.      This Court has personal jurisdiction over Defendants because, upon information and belief, they transact business in this District, have committed tortious acts in this District, derive substantial revenue from or engage in a persistent course of conduct in this District, have committed tortious acts outside this District causing injury in this District, and have otherwise established contacts within the state of New York, making the exercise of personal jurisdiction proper.

9.      Upon information and belief, Defendants regularly and systematically do business in this District, should reasonably expect to have consequences in this state based on their actions concerning the Infringing Work, and derive substantial revenue from interstate or international commerce based on the actions discussed herein.

10.      Upon information and belief, Defendants market and monetize their "Creeper Chaos [Beta]" online game (the "Infringing Work") to consumers within the state of New York and derive substantial revenue from such activity.

11.      In addition, upon information and belief, Defendants transact business, display their Infringing Work, provide for the purchase and download of such Infringing Work, and cause injury to Plaintiff in this state and District, as well as regularly doing and soliciting business in this state and District through interstate commerce.

12.      Defendants are therefore subject to personal jurisdiction under C.P.L.R. 302 (1), (2), and (3).

13.      Venue is proper in this District pursuant to 28 U.S.C. § 1400 and 28 U.S.C. § 1391(a), (b), and (c).

## **FACTUAL BACKGROUND**

Plaintiff and the Roblox Platform

14.      Plaintiff is a limited corporation organized and existing under the laws of the United Kingdom, which is and has been in the business of creating, marketing, selling, and distributing online video games for more than four (4) years.

15.      Roblox is a US-based social gaming platform that allows users to program and play games created by other users on the Roblox platform.

16.     Roblox reports "tens of millions of daily active users" of its gaming platform as of the time of filing.

17.     Plaintiff owns and operates the account @RVVZ on Roblox, through which it offers various online video games that Plaintiff developed on the Roblox platform.

Plaintiff's Games

18.     Plaintiff developed the Work in or around 2019 in the United Kingdom.

19.     Plaintiff originally created and published a version of the Work on Roblox as a game called "Creeper CHAOS" by August 2019, at

https://www.roblox.com/games/3587181112/.



20.     In or around September 2022, Plaintiff's @RVVZ Roblox account published on Roblox an updated derivative version of the Work as a game entitled "Creature CHAOS" by Detonate Games at https://www.roblox.com/games/10785055221/NEW-Creature-CHAOS, including to individuals located within the state of New York.



21.     In Plaintiff's Work, players can choose to "survive as a human to win or hunt and destroy as a creature" as users work their way through a unique set of maps, challenges, and enemies.

22.     The gameplay commences with players starting as Humans on the Human team. Players are provided with a few building blocks to create structures.

23.     Gameplay proceeds with certain players being randomly selected to become Creepers on the Creeper team.

24.     Players on the Creeper team are tasked with destroying structures created by the Human team in order to bring their structures down and defeat them.

25.     Humans who survive the Creepers gain points to buy more blocks and weaponry.

26.     The game is a round-based game, and Humans and Creepers gain points from gameplay, which they can use to grow an arsenal of weapons to help them in future rounds.

27.     Weapons, blocks, armour, and other items to aid in the Humans' survival are available to purchase at an in-game shop, including in packs of assets with names such as the "Obsidian Pack."

28.     Plaintiff is the exclusive owner to all right, title, and interest in and to the copyrights in the "Creeper CHAOS" and "Creature CHAOS" games, including the right to create derivative works.

29.     Indeed, Plaintiff is widely recognized as the original publisher of the Work.

30.     For example, a page on the Fandom website, a gaming fan platform, states "Creeper CHAOS is a ROBLOX game created by RVVZ on August 3rd, 2019." *See* https://creeper-chaos-wiki.fandom.com/wiki/Creeper_CHAOS_Wiki; *see also* https://roblox.fandom.com/wiki/Community:RVVZ/Creeper_CHAOS ("Creeper CHAOS was a building-survival Roblox game developed by RVVZ. … There is another game called Creature CHAOS created by Detonate Games, which is owned by RVVZ. It is the official sequel to the original Creeper CHAOS from 2019-2021.").

Defendants' Unlawful Activities

31.     Defendants not only had access to Plaintiff's copyrighted Work, but have admitted having access to the Work.

32.     Attached as Exhibit 1 is a true and correct copy of two printouts of the Wayback Machine digital archive of https://www.roblox.com/games/7664413141/Creeper-Chaos-Beta as of April 24, 2022 and June 7, 2022, which depict Defendants' Infringing Work, as published by Defendants on the Roblox platform.

33.     Below is a screenshot of Exhibit 1, in which Defendants admit they were or are fans of Plaintiff's "Creeper CHAOS" and/or "Creature CHAOS" game, and that Defendants considered Plaintiff's game to be the "original" and the "best thing that has ever happened to

Roblox. *Change my mind*."

> The original game was made by Palk47, which I had not played, but still needs to be accounted for. The game that I say that is the official "original" game is RVVZ's remake. I'm basing this off of that one, since that game was the best thing that has ever happened to Roblox. *Change my mind*

34.    Moreover, the screenshot above makes clear Defendants explicitly and publicly admitted that they "bas[ed] this [Infringing Work] off of that one [Plaintiff's Work]" and that "[t]he game that I say that is the official 'original' game is [Plaintiff] RVVZ's…."

35.    Defendants' fandom, however, quickly transformed into a pattern of intentional infringement and unauthorized and illegal copying of Plaintiff's copyrighted Work.

36.    In or around October 2021, Defendants released their copycat Infringing Work under the alias "RefusalMan,"[1] which is an online Roblox-based game substantially similar to Plaintiff's work, entitled "Creeper Chaos [Beta]," previously available at www.roblox.com/games/7664413141/Creeper-Chaos-Beta, to piggyback on the fame and success of Plaintiff's game.

37.    Defendants released the Infringing Work without authorization from Plaintiff, a screenshot of which is below.

---

[1] Upon information and belief, Roblox assigns a unique identification number to each game. Thus, although the displayed developer name, account name and/or game title may change, the identification number, which is included in the URL, is consistent. Throughout the relevant period of infringement, it appears Defendants have presented themselves as "Rubix Cube Fan Club n' games!" as well as RefusalMan, Refusal Studios, Rubixxman, and Creeper Chaos Revolution, among others.



38.     The gameplay of Defendant's Infringing Work is substantially similar to the gameplay of Plaintiff's 2019 "Creeper CHAOS" Work, as exemplified by the following paragraphs.

39.     Defendants' Infringing Work closely mirrors various aspects of Plaintiff's Work, ranging from the blatant copying of identical sound effects for a weapon with a phonetically identical name, same color, same general design, same purpose, and similar statistics, to essentially identical screens that appear when a character dies, to a unique "Anti Stuck" functionality used in the instance that a player gets stuck underneath a building during gameplay

(again, identically copying the associated sound effect as the character is freed), and many other aspects of Plaintiff's Work.

40.     Tellingly, Defendant's Infringing Work begins by identically copying the name of Plaintiff's original iteration of the Work: "Creeper Chaos," though denoting it as a "beta" version.

41.     Then as gameplay begins in Defendants' Infringing Work, players can choose to survive as a human to win or hunt and destroy as a creeper, just as in Plaintiff's Work.

42.     In Defendants' Infringing Work, the gameplay commences with players starting as Humans on the Human team and being provided with a few building blocks to create structures, just as in Plaintiff's Work.

43.     In Defendants' Infringing Work, gameplay proceeds with certain players being randomly selected to become Creepers on the Creeper team, just as in Plaintiff's Work.

44.     In Defendants' Infringing Work, players on the Creeper team are tasked with destroying structures created by the Human team in order to bring their structures down and defeat them, just as in Plaintiff's Work.

45.     In Defendants' Infringing Work, humans who survive the Creepers gain points to buy more blocks and weaponry, just as in Plaintiff's Work.

46.     In Defendants' Infringing Work, the game is a round-based game, and Humans and Creepers gain points from gameplay, which they can use to grow an arsenal of weapons to help them in future rounds, just as in Plaintiff's Work.

47.     In Defendants' Infringing Work, weapons, blocks, armour, and other items to aid in the Humans' survival are available to for purchase online, just as in Plaintiff's Work.

48.     In Defendants' Infringing Work, an identically named "Obsidian Pack" is available for purchase online, just as in Plaintiff's Work.

49.     Both Plaintiff's and Defendants' "Obsidian Packs" feature a highly similar black and purple weapon with a long handle and spikes encircling two sides of the head (shown below), distinctive purple and black obsidian armour, and even a similar number of obsidian blocks provided in connection with the purchase of this Obsidian Pack.



| Plaintiff | Defendants |
|-----------|------------|

50.     Notably, Obsidian is a naturally occurring rock known for being jet black in color.

51.     To the extent Obsidian varies in color, purple is not a common naturally occurring variation.

52.     Plaintiff's use of the dramatic purple hue for an obsidian weapon of this design is distinctive, original, and protectable.

53.     In addition to the similar "Obsidian Pack" aesthetics, Defendant's Obsidian Pack weapon is named "Warhammer," while Plaintiff's Obsidian Pack weapon is named "Warhammar."

54.     Defendants even used a similar sound effect as heard in Plaintiff's Work when the character pulls out the Obsidian Pack weapon.

55.     Upon information and belief, Defendants used the identical publicly available sound effect from Plaintiff's Work, but slowed down the playback speed approximately 20%, just as in Plaintiff's Work.

56.     Defendants did not stop there in copying gameplay components.

57.     Defendants mirrored Plaintiff's inclusion of an existing Herobrine character, but copied the look and feel of Plaintiff's red, stylized font and specific reference to "Herobrine's Revenge" as a notable plot point in the Infringing Work's gameplay.

| Plaintiff | Defendants |
|---|---|
| HEROBRINE'S REVENGE | HEROBRINE'S REVENGE |

58.     In Defendants' Infringing Work, when a player chooses to use "Herobrine's Revenge," the identical words "[Player Name] has summoned Herobrine's Revenge!!!" appear on the screen in similar red font as shown above, just as in Plaintiff's Work.

59.     Likewise, as in Plaintiff's Work, in Defendants' Infringing Work, summoning Herobrine's Revenge drops identically named "TNT" blocks (dynamite) from the sky in scattered fashion, bombing surrounding enemies.

60.     Defendants even copied the pricing of Plaintiff's Herobrine's Revenge gameplay, priced identically at 45 of the Roblox platform's "Robux" currency.

61.     Players generally obtain Robux by purchasing it with legal tender currency.

62.     When players of the Infringing Work purchase related items for use in connection with the Infringing Work, Defendants directly profit.

63.     Continuing to copy aspects of the Work's gameplay, the Infringing Work displays a similar screen when a character dies in the game, as shown below.

11

| Plaintiff | Defendants |
|---|---|
|  | |

64.     Not only do these screens feature identical text at the top (i.e., "Survive the Creepers!"), the identical immediately following text of "Eliminated: [Player Name]," and an identically placed play clock below that text—both of which are set off in a similar gray rectangular bar with lighter grey dashes across the top (a "spectrum visualizer" that moves in synch with gameplay sounds) and similar icons flanking it on the left and right sides—but they also use identical emoji-like images: ten (10) charcoal colored armour icons in a horizontal line, immediately followed by a row of ten (10) red heart icons.

65.     The options to use the same two limited weapons (sword and torch) appear when a character dies in both Plaintiff's Work and Defendants' Infringing Work.

66.     In addition, like Plaintiff's Work, Defendants' Infringing Work features a chat box built into the screen immediately below the gameplay images shown above that displays identical text when a character dies.

67.     Defendants' intent to copy these aspects from Plaintiff's Work is clear from their posting to an online forum, shown below, in which Defendants seek advice on how to create a music bar just like the one in Plaintiff's Work, even going so far as to include a screenshot of Plaintiff's Work and to link to gameplay videos of Plaintiff's Creeper Chaos Work.



68.     Attached as Exhibit 2 is a true and correct copy of a printout of the Wayback

Machine digital archive of the Roblox forum available at

https://web.archive.org/web/20230817195350/https://devforum.roblox.com/t/how-do-i-make-a-

music-bar-like-this/1765148 as of August 17, 2023, which includes the screenshot shown in the

preceding paragraph.

69.     Defendants posted on similar online forums repeatedly, expressing their intent to

replicate the Plaintiff's Creeper Chaos Work.

70.     Attached as Exhibit 3 is a true and correct copy of another example of Defendants

posting on forums seeking help to replicate aspects of Plaintiff's Work, in the form of a printout

of the Wayback Machine digital archive available at

https://web.archive.org/web/20230801025408/https://scriptinghelpers.org/questions/127894/wha

ts-the-real-method-for-changing-the-players-character as of August 1, 2023, in which Defendants

state, "I'm currently making a creeper chaos game, and I want to change the player's character into a creeper."

71.     Further, even the order and names of Defendants' primary weapons statistics overlap identically, as shown below.

| Plaintiff | Defendants |
|---|---|
| Damage: 25<br>Knockback: 1.5<br>Swing rate: 0.55 | Damage: 15<br>Knockback: 4 Blocks<br>Swing rate: 1s |

72.     Similarly, Defendants' Infringing Work uses substantially similar building materials.

73.     Along with somewhat standard building materials like wood, stone, iron, and doors, Defendants' Infringing Work includes the same additional building materials as Plaintiff's Work: obsidian, glass, cobwebs, glowstone, trapdoors, cobblestones, and scaffolds.

74.     Names of armour likewise overlap between the games, including leather armour, iron armour, diamond armour, and obsidian armour.

75.     Defendants also replicate Plaintiff's "spirit orb" attack, renaming it the synonymous "phantom orb."

76.     Both Plaintiff's spirit orb and Defendants' phantom orb attacks involve a character deploying a small spherical device that quickly erupts into similarly larger balls of light that rotate and kill enemies.

77.     Among other gameplay aspects and functionality, Defendants also copied Plaintiff's unique "Anti Stuck" Tool that is used in the instance that a player gets stuck

underneath a building: it plays a sound and teleports the character a small distance upwards to free them.

78.     Not only did Defendants copy this functionality, but they also use an essentially identical—if not identical—sound associated with the "Anti Stuck" functionality as in Plaintiff's Work.

79.     By creating the Infringing Work, Defendants have engaged in unauthorized copying of Plaintiff's Work and have created an unauthorized derivative work thereof.

80.     Further, by posting the Infringing Work online, Defendants have engaged in the unauthorized distribution, display, and public performance of Plaintiff's Work.

Defendants' Nefarious DMCA Activity

81.     Defendants did not stop there. On or around July 6, 2023, Defendants then submitted a baseless Digital Millenium Copyright Act ("DMCA") notice to Roblox, falsely alleging that Plaintiff's new Creature Chaos game infringed Defendants' Infringing Work.

82.     Attached as Exhibit 4 is a true and correct copy of Defendants' baseless Digital Millenium Copyright Act ("DMCA") notice to Roblox detailed in the preceding paragraph.[2]

83.     However, contrary to Defendants' July 6, 2023 DMCA notice, Defendants' Infringing Work is the one that infringes Plaintiff's Work—not the other way around.

84.     As a direct result of Defendants' fraudulent DMCA notice, Plaintiff's Work was removed from the Roblox platform for approximately three (3) weeks.

85.     This removal simultaneously caused financial losses to Plaintiff and improperly awarded ill-gotten gains to Defendants, irreparably harming Plaintiff.

---

[2] In Exhibit 4, Defendants sought removal of Plaintiff's "Creeper Chaos" (https://www.roblox.com/games/7664413141/Creeper-Chaos) and "Creeper Chaos 2" (https://www.roblox.com/games/10785055221/NEW-Creeper-CHAOS-2) games. The cited "Creeper Chaos 2" URL now redirects to Plaintiff's Creature Chaos game.

86.     This removal also simultaneously caused irreparable harm to Plaintiff by harming Plaintiff's reputation in the online gaming community.

87.     On or around July 11, 2023, counsel for Plaintiff submitted a valid counter-notice to Roblox.

88.     Attached as Exhibit 5 is a true and correct copy of Plaintiff's July 11, 2023 counter-notice detailed in the preceding paragraph.

89.     Notably, Defendants did not pursue litigation in response to the counter-notice, knowing that they had no legitimate basis to do so.

90.     Roblox eventually reinstated Plaintiff's Creature Chaos game on or about July 27, 2023.

91.     To prevent further infringement by Defendants, Plaintiff then submitted its own valid DMCA notice to Roblox regarding Defendants' Infringing Work on July 31, 2023.

92.     Attached as Exhibit 6 is a true and correct copy of Plaintiff's valid DMCA notice to Roblox detailed in the preceding paragraph.

93.     The Infringing Work was removed from Roblox on or about August 7, 2023.

94.     On August 16, 2023, in an effort to reinstate their Infringing Work, Defendants submitted a baseless counter-notice to Roblox.

95.     Attached as Exhibit 7 is a true and correct copy of Defendants' baseless August 16, 2023 counter-notice to Roblox detailed in the preceding paragraph.

96.     On information and belief, Defendants' infringement of Plaintiff's Work is willful, intentional, and deliberate, and was accomplished with the intent to reap the benefits of Plaintiff's original work of authorship.

97.     Apart from Angela Chinn d/b/a/ RefusalMan, because any additional true name(s) of owner(s) of the Infringing Work in the United States are currently unknown to Plaintiff, Plaintiff has sued defendant Does 1-10.

98.     Without discovery, Plaintiff is unable to plead additional facts as to how any additional third parties are involved in the infringing activities discussed herein. Accordingly, such third parties are sued herein as Does 1-10.

## THE WORK IS SUBJECT TO PROTECTION UNDER THE COPYRIGHT ACT PURSUANT TO THE BERNE CONVENTION

99.     Both the United States and the United Kingdom are signatories to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention").

100.     Pursuant to the terms of the Berne Convention and the implementing statutes in the signatory countries thereto, each signatory country is obligated to afford the same protection under its copyright laws to a work originating in another of the signatory countries as it would to a work originating within that country.

101.     Thus, each signatory country of the Berne Convention is obligated to recognize and enforce Plaintiff's copyright in the Work as it would if the work had originated in that country.

102.     While pre-registration or registration is a prerequisite for bringing an action for copyright infringement of a "United States work" pursuant to Section 411(a) of the U.S. Copyright Act, 17 U.S.C. § 411(a), it is not necessary to enforce a non-United States copyrighted work in litigation in US courts.

103.    Plaintiff's Work constitutes a Berne Convention work as defined in the Copyright Act, Title 17 U.S.C., § 101, as amended, and is subject to the protection of the Copyright Act of 1976, Title 17 U.S.C. §§ 101 *et seq.*

104.    United Kingdom law does not require any formalities, such as registration, for a copyright work owner to exercise its rights, including the exercise of rights in the United States through the Berne Convention.

105.    Because the alleged infringement is occurring in the United States, domestic law applies to Plaintiff's infringement claims.

**FIRST CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT**
**<u>(17 U.S.C. §§ 501 *et seq.*)</u>**

106.    Plaintiff repeats and re-alleges each and every allegation set forth above, and incorporates them herein by reference.

107.    The Work is an original audiovisual work that has been fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of Section 102 of the Copyright Act, 17 U.S.C. § 102.

108.    The claimed original elements of the Work are owned by Plaintiff (and/or its parent, subsidiaries, licensees or affiliates), and Defendants are creating derivative works based on the Work without authorization.

109.    Upon information and belief, Defendants have monetized and will continue to monetize, display, and distribute, the unauthorized Infringing Work, including within the state of New York.

110.    Under the Copyright Act, a copyright owner enjoys the exclusive rights, among others, to reproduce in copies their copyrighted works, to distribute copies to the public of their

copyrighted works, to publicly perform their copyrighted works, to publicly display their copyrighted works, and to make derivative works based upon their copyrighted works.

111.    Further under the Copyright Act, a copyright owner also owns the exclusive right to authorize others to exercise the rights set forth in the preceding paragraph.

112.    Plaintiff has not granted any license, permission, or authorization to Defendants to exercise any of the rights as set forth in this Complaint or to authorize others to exercise such rights with respect to the copyrighted Work or any other works in which Plaintiff (and/or their parents, subsidiaries, licensees, or affiliates) owns copyrights.

113.    By creating, posting, and monetizing the Infringing Work, Defendants have engaged in the unauthorized copying, distribution, public display, and public performance of Plaintiff's Work.

114.    In addition, Defendants' Infringing Work constitutes an unauthorized derivative work of Plaintiff's Work.

115.    Defendants have committed and will continue to commit each act of copyright infringement with the knowledge that they were not authorized to exercise any of the rights (or to authorize others to exercise any of the rights) set forth in this Complaint with respect to the Work.

116.    As a result of Defendants' willful copyright infringement, Plaintiff has been and is being irreparably harmed.

117.    The Copyright Act provides for, among other things, injunctive relief to remedy such instances of infringement. 17 U.S.C. § 502.

118.    In addition, the Copyright Act provides for monetary damages in the form of actual damages and the infringer's profits attributable to the infringement.  17 U.S.C. § 504(b).

119.    Unless restrained by the Court, Defendants will continue to engage in such willful copyright infringement.

120.    By facilitating and aiding these infringements, Does 1-10 are contributing to copyright infringements and are thus directly or vicariously liable under the Copyright Act 17. U.S.C. §§ 101 *et seq*.

121.    Accordingly, the Court should grant injunctive relief barring Defendants from copying the Work, including creation, display, and distribution of derivative works thereof, as well as an award of damages along with any other relief that the Court deems just, proper and equitable.

**WHEREFORE**, Plaintiff requests that the Court enter judgement in its favor and against Defendants as follows:

1.    An order permanently enjoining Defendants and their officers, agents, servants, and employees, and all those in active concert or participation with them, from infringing upon Plaintiff's exclusive rights to the Work, and from instructing, assisting, aiding, or abetting any other person or entity in infringing upon Plaintiff's exclusive rights to the Work;

2.    An order permanently disabling Defendants' Infringing Work on any platform, including the Roblox platform where the game is available at https://www.roblox.com/games/7664413141/Creeper-Chaos.

3.    An award to Plaintiff of its actual damages and Defendants' profits attributable to the infringement of Plaintiff's copyrighted Work pursuant to 17 U.S.C. § 504(b);

4.    An award of Plaintiff's interest, including pre-judgment interest, on the foregoing sums;

5.      An order directing Defendants to file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the above; and

6.      Awarding Plaintiff such other and further relief as the Court may deem just and proper.

DATED: August 30, 2023                    Respectfully submitted,

                                          KILPATRICK TOWNSEND & STOCKTON LLP

                                          By: _/s/ James A. Trigg_____

                                          James A. Trigg (5780648)
                                          Georges Nahitchevansky (GN7750)

                                          1114 Avenue of the Americas
                                          New York, NY 10036
                                          Telephone: (212) 775-8700
                                          Facsimile: (212) 775-8800
                                          Email: ghn@kilpatricktownsend.com
                                                 JTrigg@kilpatricktownsend.com

                                          *Attorneys for Plaintiff*